UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
HENRY and CATHLEEN ZENO, on
behalf of their minor son, A.Z.,

          Plaintiffs,

-vs-

PINE PLAINS CENTRAL SCHOOL
DISTRICT,

          Defendant.
------------------------------------------------------X

COMPLAINT

JURY TRIAL DEMANDED
ECF Case

**WP4**

**07 CIV. 6508**

FILED
JUL 18 2007
USDC WP SDNY

## I  PARTIES

1. Plaintiffs are the parents of A.Z., a minor son who attends high school in Pine Plains Central School District. One of the few minority students at Pine Plains High School, A.Z. is a mixed-race male born on January 5, 1989. He is a classified special education student.

2. Defendant Pine Plains Central School District is a municipal organization organized pursuant to the laws of the State of New York. As the recipient of federal funding, defendant has a duty to provide students with an educational environment free from racial harassment.

## II  JURISDICTION AND VENUE

3. As plaintiff brings this action under Title IX of the Civil Rights Act of 1964, 20 U.S.C. § 1681, et seq., this Honorable Court has subject matter jurisdiction.

4. As the events giving rise to this action occurred in Dutchess County, within this Judicial district, this case is properly venued in Southern District of New York.

### III FACTUAL AVERMENTS

5. The Zeno family re-located into the Pine Plains School District in January 2005. Almost immediately upon A.Z.'s enrollment at Pine Plains High School, white classmates began taunting and harassing him on account of his mixed-race, repeatedly subjecting him to racial epithets and racially-motivated threats.

6. Reflecting deliberate indifference to plaintiff's rights under Title IX, defendant has shown a lack of initiative in properly responding to the steady stream of continuous and concerted student-on-student racial harassment to which A.Z. has been subjected.

7. In February 2005, a white student walked up to A.Z. and, in the presence of teachers and other students, said, "you fucking nigger, you don't belong in Pine Plains, you need to move back to where you came from." This harassment was typical of the severe and pervasive abuse heaped upon A.Z. for the next year-and-a-half, which abuse has deprived him of equal access to defendant's resources and opportunities.

8. When plaintiffs complained to the school principal, John Howe, after this initial episode of racial harassment, Howe told plaintiffs that, while he would speak to the offending student and his family, plaintiffs had to remember that they were now living in a small town and that plaintiffs did not want to "burn any bridges." He also said that the offending student's mother would not address the problem and that "the apple doesn't fall far from the tree."

9. A few days later, plaintiffs brought the problem to the Superintendent's attention.

The Superintendent, Dr. Linda Kaumeyer, told plaintiffs that the district maintained a zero-tolerance policy but that "it takes time to get acclimated to small town living."

10. In May 2005, plaintiffs met with the Board of Education to complain about the racial harassment. That month plaintiffs also wrote a detailed letter to the Superintendent of Schools outlining the harassment to which their children had been subjected. Although this was the first of several letters that plaintiffs wrote to school officials about the problem, the racial harassment continued both on and off campus through January 2007 as defendant failed to take effective remedial action as required by law.

11. In September 2005, after A.Z. complained that a student had thrown a chair at him in the cafeteria and uttered racial epithets, the offending student told the principal that "I am going to get him whether in school or out. I will kill him." Although the principal called the Dutchess County Sheriff's office for assistance, the harassment continued unabated as racist students threatened A.Z. through his sister, J.Z., who also attended the high school. Although J.Z. reported this threat to the Dean of Discipline, the Dean did not contact plaintiffs to discuss this episode.

12. Indeed, J.Z. was also targeted for racial violence and threats at the high school. When plaintiffs complained to the principal about this in September 2005 and urged that he take action to protect their children, he replied that Pine Plains was a small district and, since A.Z. and J.Z. had individual education plans, there was

3

nothing else he could do.

13. In January 2006, after plaintiffs' attorney complained to the district about the above racial discrimination and plaintiffs advised school authorities about death threats left for A.Z. in the school bathroom, Howe told plaintiffs that he did not know how to keep A.Z. safe.

14. Since 2005, Howe has told plaintiffs on several occasions that he does not know how to keep A.Z. safe at Pine Plains High School. Although plaintiffs' attorney in November 2005 offered various suggestions to remedy the problem (including assigning a "shadow" to escort A.Z. through the hallways), Howe repeated this comment in February 2006 after he witnessed a student try to attack A.Z. in the hallway, and he said it again a few weeks later after students vandalized A.Z.'s locker.

15. In March 2006, the high school was locked down and placed on "code yellow" after school authorities feared that individuals who had made racial threats off-campus to A.Z. and another black student a few days earlier had come to the school to carry out those threats. When Howe met with plaintiffs on this date, he said that he could not guarantee A.Z.'s safety and that he could only focus on long-term goals.

16. That June, attending A.Z.'s annual special education meeting to set up his schedule for the following school year, plaintiffs asked if the district could transfer A.Z. to another high school to protect him from the threats and violence. The Director of Special Education, Mary Stoovoguel, said this was not an

acceptable solution and that she did not have a crystal ball and could not guarantee A.Z.'s safety.

17. The student-on-student racial harassment continued in fall 2006, as students vandalized A.Z.'s locker and issued death threats over the Internet. It was not until plaintiffs complained about this episode that defendant brought in a diversity trainer to meet with staff and students in November 2006.

18. Although defendant has from time to time suspended the offending students who have racially harassed A.Z, the harassment continues unabated, typically by other classmates, and it has extended to racial harassment off-campus.

19. Upon return to school from their suspensions, some of the offending students have been assigned to A.Z.'s classes. These students often remained in A.Z.'s class before defendants changed A.Z.'s schedule.

20. In addition, one offending student was on the high school football team with A.Z. for the 2005-06 season, even after he returned from suspension. Although Cathleen Zeno complained about this to the principal and head coach, the offending student remained on the team for the rest of the season.

21. Similarly, defendant has failed to properly respond to the racial harassment even though local law enforcement has obtained for A.Z. orders of protection against some of the offending students. These orders of protection placed defendant on notice that the racial harassment problem at the high school was serious and warranted effective remedial action to ensure that A.Z. received an appropriate education in an environment free from racial threats and violence.

22. Defendant was aware of the racial harassment to which A.Z. was subjected but failed to take appropriate remedial action, which often resulted after an unreasonable amount of time.

23. The racial harassment caused A.Z. to suffer significant emotional and physical damages. It has also affected his academic performance.

24. The distraction occasioned by the racial harassment to which A.Z. has been subjected has caused Henry and Cathleen Zeno to suffer lost wages.

## IV. CAUSE OF ACTION

25. Plaintiff incorporates the allegations in ¶¶ 1-24 as if fully restated herein.

26. In failing to provide A.Z. an educational environment free from racial harassment and intimidation, defendant has violated Title IX of the Civil Rights Act of 1964.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court:

a. assume jurisdiction over this matter;

b. empanel a jury to hear and decide this matter;

c. award to plaintiffs compensatory damages to compensate their son for the physical and emotional damages he sustained as a result of defendant's failure to provide for an educational environment free from racial discrimination;

d. award to plaintiffs punitive damages on the Federal claims in light of defendant's conscious disregard of the civil rights laws;

e. award to plaintiffs reasonable attorneys' fees and costs expended in litigating this matter; and

   f. award such other damages and relief deemed just and proper.

Dated: July 10, 2007

Respectfully submitted,

*/s/ Stephen Bergstein*
STEPHEN BERGSTEIN

BERGSTEIN & ULLRICH, LLP
15 Railroad Avenue
Chester, New York 10918
(845) 469-1277
Counsel for plaintiffs